# IN THE UNITED STATES DISTRICT COURT
# FOR THE SOUTHERN DISTRICT OF TEXAS

| | | |
|---|---|---|
| **SECURITIES AND EXCHANGE COMMISSION,** | § § § § | Miscellaneous. Action No.: 15-1334 |
| | § | U.S. District Court for the |
| **Plaintiff,** | § | Southern District of Texas |
| | § | |
| **v.** | § | |
| | § | |
| **SETHI PETROLEUM, LLC and** | § | Civil Action No.: 4:15-cv-338 |
| **SAMEER P. SETHI,** | § | |
| | § | U.S. District Court for the |
| **Defendants.** | § | Eastern District of Texas |
| | § | |

## NOTICE OF APPOINTMENT OF RECEIVER

The Court-appointed Receiver, Marcus Helt (the "**Receiver**"), for Defendants Sethi Petroleum, LLC ("**Sethi Petroleum**") and Sameer P. Sethi ("**Mr. Sethi**") (collectively, the "**Receiver Defendants**") hereby files this *Notice of Appointment of Receiver* (the "**Notice**") pursuant to 28 U.S.C. § 754 and respectfully shows the Court as follows:

1. On May 14, 2015, the plaintiff, Securities and Exchange Commission, filed its Complaint (the "**Complaint**") against the Receiver Defendants in the U.S. District Court for the Eastern District of Texas (the "**Texas Eastern District Court**"), Civil Action No. 4:15-cv-338. A true and correct copy of the Complaint is attached hereto as **Exhibit A**.

2. On May 14, 2015, the Texas Eastern District Court issued its *Order Appointing Receiver* (the "**Receiver Order**"). A true and correct copy of the Receiver Order is attached hereto as **Exhibit B**.

3. In order to obtain complete jurisdiction and control of the property of the Receiver Defendants, "[the] receiver shall, within ten days after the entry of his order of

appointment, file copies of the complaint and such order of appointment in the district court for each district in which property is located." 28 U.S.C. § 754.

   4. Pursuant to 28 U.S.C. § 754, the receiver hereby files this Notice, along with file-stamped copies of the Complaint and the Receiver Order, in this judicial district.

   WHEREFORE, PREMISES CONSIDERED, the Receiver requests that this Court grant him all relief at law or in equity to which he shows himself to be justly entitled.

Respectfully submitted,

*/s/ Michael S. Haynes*
Michael S. Haynes (TX 24050735)
Evan R. Baker (TX 24073879)
GARDERE WYNNE SEWELL LLP
1601 Elm Street, Suite 3000
Dallas, Texas 75201
(214) 999 4667 (facsimile)
(214) 999 3000 (telephone)
mhaynes@gardere.com
ebaker@gardere.com

Gardere01 - 6613514v.1

# EXHIBIT A

# IN THE UNITED STATES DISTRICT COURT
## FOR THE EASTERN DISTRICT OF TEXAS
### SHERMAN DIVISION

| | | |
|---|---|---|
| **SECURITIES AND EXCHANGE COMMISSION,** | § | |
| | § | |
| **Plaintiff,** | § | |
| | § | |
| **v.** | § | |
| | § | |
| **SETHI PETROLEUM, LLC and** | § | |
| **SAMEER P. SETHI,** | § | **Case No.:** |
| | § | |
| **Defendants** | § | |

## COMPLAINT

Plaintiff Securities and Exchange Commission ("Commission") files this Complaint against Defendants Sethi Petroleum, LLC ("Sethi Petroleum") and Sameer P. Sethi. ("Sethi") (collectively, "Defendants") and would respectfully show the Court as follows:

## I.
## SUMMARY

1.      From at least January 2014 to the present, Defendants carried on a fraudulent scheme and made materially false and misleading statements and omissions to potential and actual investors in order to offer and sell securities in the Sethi-North Dakota Drilling Fund-LVIII Joint Venture ("NDDF").

2.      Through the fraudulent NDDF offering, Defendants raised more than $4 million from approximately 90 investors located in 28 states.  In offering documents, Sethi Petroleum's website, and other communications with investors, Defendants, among other things:

- falsely represented that 70% of their investment funds would be used to acquire, drill, and complete 20 oil and gas wells, of which NDDF would own approximately 62.5% "net working interest;"



- falsely represented that investors could expect annual returns as high as 30-60% or more;

- falsely represented to investors that Sethi Petroleum was partnered with "major oil and gas companies" such as Continental Resources, Exxon Mobil, Hess Corporation, and ConocoPhillips; and

- falsely represented to investors Sethi's business background and inadequately disclosed Sethi's history of criminal incarceration and state regulatory actions against Sethi Petroleum and Sethi.

3.      Instead of using NDDF investors' funds to acquire interests in oil and gas wells in the expected proportions, Defendants used the majority of investors' funds to pay themselves their salesmen, and employees of Sethi Petroleum's parent company.

4.      Based on these intentional misrepresentations and conduct alleged below, Defendants have offered and sold – and are continuing to offer and sell – securities in violation of the antifraud provisions of the federal securities laws, specifically Section 17(a) of the Securities Act of 1933 (the "Securities Act") and Section 10(b) of the Securities Exchange Act of 1934 (the "Exchange Act") and Rule 10b-5 thereunder.  Additionally, Defendant Sethi violated Sections 20(b) of the Exchange Act and is liable as a control person under Section 20(a) for Sethi Petroleum's primary violations of Section 10(b) of the Exchange Act and Rule 10b-5 thereunder. Unless Defendants are enjoined by the Court, they will continue to fraudulently offer and sell securities in violation of federal law.

5.      To protect the public from any further fraudulent activity and harm, the Commission brings this action against Defendants seeking: (i) temporary emergency and preliminary relief; (ii) permanent injunctive relief; (iii) disgorgement of ill-gotten gains resulting

from Defendants' violations of federal securities laws; (iv) accrued prejudgment interest on those ill-gotten gains; and (v) civil monetary penalties.

## II.
## JURISDICTION AND VENUE

6.      Defendants offered and sold purported oil and gas joint venture interests, which investments constitute securities, and/or did offer and sell investment contracts, under Section 2(a)(1) of the Securities Act [15 U.S.C. § 77b(a)(1)] and Section 3(a)(10) of the Exchange Act [15 U.S.C. § 78c(a)(10)].

7.      The Commission brings this action under Section 20(b) of the Securities Act [15 U.S.C. § 77t(b)] and Section 21(d) of the Exchange Act [15 U.S.C. § 78u(d)].  The Commission seeks the imposition of civil penalties pursuant to Section 20(d)(2)(C) of the Securities Act [15 U.S.C. §77t(d)] and Section 21(d)(3)(B)(iii) of the Exchange Act [15 U.S.C. §§ 78u(d)].

8.      This Court has jurisdiction over this action under Sections 20(b) and 22(a) of the Securities Act [15 U.S.C. §§ 77t(b) and 77v(a)] and Sections 21 and 27 of the Exchange Act [15 U.S.C. §§ 78u and 78aa] because Defendants directly or indirectly made use of the means or instrumentalities of commerce and/or the mails in connection with the transactions described herein.  Venue is proper under Section 22(a) of the Securities Act [15 U.S.C. § 77v(a)] and Section 27 of the Exchange Act [15 U.S.C. § 78aa], because certain of Defendants' acts, practices, transactions, and courses of business alleged herein occurred within this judicial district.

## III.
## DEFENDANTS

9.      Sameer P. Sethi, age 33, resides in Murphy, Texas. Sethi is the President and sole Managing Member of Sethi Petroleum.  He was convicted of aggravated assault in Collin

County, Texas and incarcerated from June 2006 through January 2009. In 2010, Sethi and Sethi

Petroleum, LLC's predecessor were permanently enjoined from engaging in unregistered and

fraudulent offerings in the State of Colorado in a civil action brought by the Colorado Securities

Commissioner.

10.     Sethi Petroleum, LLC, f/k/a Sameer P. Sethi Financial Group and Sethi Oil & Gas

Inc. ("Sethi Petroleum Predecessors") was formed in 2003 and is a Texas limited liability

company located and doing business in Plano, Texas. Sethi Financial Group, Inc. owns 100% of

the capital stock of Sethi Petroleum. Sethi Oil & Gas, Inc. was ordered to cease and desist from

offering and selling unregistered securities in Pennsylvania in 2006 and Colorado in 2009.

## IV.
## FACTS

**A.  DEFENDANTS OFFERED AND SOLD SECURITIES IN CONNECTION WITH AN OIL AND GAS INVESTMENT PROGRAM.**

11.     From at least January 2014, Sethi Petroleum has offered and sold securities in the

form of purported joint venture ("JV") interests in NDDF, representing that investors will profit

from the sale of oil and gas and obtain tax benefits offsetting income from other sources.

12.     Defendants represent to prospective investors that the program will include

purchasing "net working interests" amounting to 62.5% of up to 20 wells in the Bakken Shale

and Three Forks formations located in the Williston Basin of North Dakota, South Dakota, and

Montana.

13.     Defendants market the purported "joint venture" interests, and all investors were

required to sign a joint venture agreement ("JVA") appointing Sethi Petroleum as NDDF's

"managing venturer." While the JVA empowers Sethi Petroleum to manage NDDF's daily

operations, certain actions require a majority vote of NDDF investors. In practice, NDDF

investors are not, and have never been, consulted by Sethi Petroleum before such actions and their voting power is illusory.

14.     Defendants represent that they plan to raise $10 million from investors to purchase these interests.  They began raising funds from NDDF investors in or about January 2014.

15.     By mid-April 2015, Defendants had raised over $4 million from approximately 90 NDDF investors in at least 28 states, marketing the investments through a boiler room where a salesforce of 20 people, armed with sales scripts, cold-called prospective investors using purchased lead lists.  The NDDF offering is still open for new investment and Defendants obtained new NDDF investment funds as recently as March 2015.  Sethi regularly visits the boiler room, providing sales tips to sales staff and providing specific sales misrepresentations.

**B.      DEFENDANTS MAKE MATERIAL MISREPRESENTATIONS AND OMISSIONS IN CONNECTION WITH THE OFFER, PURCHASE, AND SALE OF SECURITIES IN NDDF.**

16.     Among their promotional materials, Defendants created a private placement memorandum ("PPM") and an Executive Summary for the NDDF program (collectively, the "Offering Documents") and provided them to potential investors.  Defendants' Offering Documents contain materially false and misleading statements and omissions.

17.     Additionally, as stated above, Defendant Sethi personally directs salespeople to make materially false and misleading statements and omissions in soliciting investors in the NDDF project.

**1.      Misrepresentations Regarding Use of Investor Proceeds and the Scope of the NDDF Investment**

18.     The Offering Documents represent that 70% of funds received from investors will be used to acquire, drill, and complete up to 20 oil and gas wells.  In reality, Defendants have

used only 23.5% – about $950,000 – of the over $4 million raised from NDDF investors to acquire, drill, and complete wells.

19.     The Offering Documents also represent that Sethi Petroleum will take 25% of the funds contributed by investors in connection with "Syndication," "Administration," and "Management" of the venture.  In reality, Sethi Petroleum has already spent more than 76.4% – over $3.1 million – the majority of which are undisclosed or unapproved expenditures such as $577,000 paid directly to Sameer and Praveen Sethi, $1.1 million to pay salaries at Sethi Financial Group, and $1.04 million paid to sales employees.

20.     In the PPM, Defendants represent that Sethi Petroleum will not commingle NDDF investors' funds with Sethi Petroleum, its affiliates, or any other joint venture in which Sethi Petroleum participates.  In reality, Defendants commingled NDDF investors' funds with Sethi Petroleum's operating fund, apparently spending NDDF investors' funds on various items unrelated to the NDDF program.

21.     Defendants also falsely represent in Offering Documents that any commissions paid to Sethi Petroleum's salesmen will be deducted from Sethi Petroleum's one-time 25% management fee.  Sethi Petroleum has not, in fact, deducted sales commissions from its management fee and the combined total of sales commissions and Sethi Petroleum's management fee greatly exceeds the 25% represented to NDDF investors.

22.     The Offering Documents also falsely state that the program will be a "10 million dollar fund that will acquire approximately 400 acres and will participate in the drilling of 20 wells or a number of wells that will result in the fund owning approximately 62.5% net [working interest] in oil producing wells . . . ."  In truth, NDDF investors own between 0.15% and 2.5% interests in only eight wells, two of which were never drilled.

23.     In late 2014, Sameer Sethi directed Sethi Petroleum's sales staff to tell potential investors that NDDF already owned an interest in twelve wells with more to come. This was false, as Sethi Petroleum only purchased minimal interests in eight wells on behalf of NDDF, which purchase it later sued to rescind.

### 2.     Misrepresentations Regarding Industry "Partnerships" and Performance of NDDF Wells

24.     Sethi Petroleum's cold call script reads, "[w]e're partnered directly with a couple of HUGE, PUBLICLY traded companies like Conoco Phillips, Continental, GMXR just to name a few. We are working directly with these major companies." Similarly, Sethi Petroleum's website features logos for Exxon, Hess, and other major companies as affiliates of the company. Additionally, the PPM states that NDDF's wells will be "operated by publicly traded and/or major oil and gas companies." In reality, for NDDF, Sethi Petroleum acquired small working interests in just eight wells from an obscure private oil company in North Dakota that was reselling interests it had acquired elsewhere.

25.     In late 2014, Sethi Petroleum's sales staff, at the direction of Sameer Sethi, told potential investors that NDDF already owned interests in twelve wells which were producing a total of one million barrels per month. Those statements were false. As stated above, Sethi Petroleum purchased interests in only eight wells for NDDF – two of which were not drilled. 2015 production reports reveal that NDDF's wells produced a combined total of 9,147 barrels of oil in January, 13,995 barrels in February, and 12,357 barrels in March – a far cry from the one million barrels per month claimed by Defendants. Worse, those misrepresentations were made after Defendants filed a lawsuit in September 2014 to rescind NDDF's purchase of those few working interests – the only oil and gas assets in the NDDF. *See North Dakota Drilling Fund 58 v. Irish Oil and Gas, Inc.,* No. 3:14-CV-03336, in the United States District Court for the

Northern District of Texas (Dallas Division). Although Defendants sued on behalf of NDDF and have already spent over $40,000 litigating this still-pending claim, they have never informed NDDF investors of the litigation, its cost, or the possibility that, if NDDF prevails, the program will own no oil and gas interests.

26.    In late 2014, Sethi Petroleum's sales staff, at the direction of Sameer Sethi, told potential investors that they could expect annual returns as high as 30-60% or more. The sales staff also told investors they could recoup their initial investment after a year-and-a-half of production. In reality, such returns were a patent impossibility because Defendants misappropriated the majority of investor funds and only purchased between 0.15% and 2.5% interests in eight wells.

27.    Defendants further solicited potential NDDF investors through a January 2015 craigslist.org posting that claimed existing investors had already realized average returns of 30% to 50% per year. At the time of this posting, Defendants knew this claim to be false.

28.    Additionally, in the NDDF Executive Summary, Defendants claims that "Sethi Petroleum's corporate governance policy is to quarterly deliver proclamation and proxy (P&P) notices to the investors so that they may remain up to date with recent activities as well as be involved in the decision making process of the North Dakota Drilling Fund-LVIII Joint Venture." In fact, Sethi Petroleum has never provided quarterly updates or voting opportunities to NDDF investors.

### 3.    Misrepresentations and Omissions about Sameer Sethi's and Sethi Petroleum's Background

29.    Defendants' NDDF PPM falsely claims that Sameer Sethi had managed Sethi Petroleum since the company was founded in 2003. This is false. Sethi was convicted of aggravated assault in Collin County, Texas and incarcerated from June 2006 through January

2009. And while NDDF's PPM mentions a "control person's" prior indictment on the last page of the 40-page PPM, it fails to identify Sameer Sethi by name or disclose the fact of his conviction and two-and-a-half year incarceration.

30.     In NDDF's PPM, Defendants claim that Sethi was a "registered representative of FINRA (Financial Industry Regulatory Authority)." In fact, aside from misrepresenting the nature of FINRA registration, Sethi was never "registered" with FINRA or any FINRA member. Sethi was once employed for ten months by a registered broker-dealer, but was not a registered representative.

31.     The PPM also falsely misrepresents Defendants' prior censure under Pennsylvania and Colorado Securities laws, merely stating that "[a] certain control person of the Managing Venturer has previously been alleged of violating the registration requirements in connection with marketing investments in oil and gas ventures in the states of Colorado and Pennsylvania. These matters were settled with minimal litigation."

32.     In fact, On May 31, 2006, the Pennsylvania Securities Commission ordered a Sethi Petroleum Predecessor and Praveen Sethi, Sameer Sethi's father, to cease and desist offering and selling unregistered securities in the state.

33.     Then in 2009, Sethi and a Sethi Petroleum predecessor agreed with the Colorado Division of Securities to cease and desist selling unregistered securities in Colorado. Nevertheless, in 2010, the Colorado Securities Commissioner filed a civil injunctive action alleging that Sethi and the Sethi Petroleum predecessor were continuing to solicit Colorado investors to participate in a fraudulent unregistered offering in violation of the 2009 cease and desist order. On May 29, 2010, Sethi and the Sethi Petroleum predecessor agreed to be permanently enjoined from engaging in unregistered and fraudulent offerings in Colorado.

**C.** **DEFENDANTS CARRIED OUT A SCHEME TO DEFRAUD INVESTORS.**

34.    To persuade investors, Defendants are engaged in a practice and course of business that consists of making the untrue statements and omissions of material facts alleged above, concerning the nature of Sethi Petroleum's business, Sameer Sethi's experience, their historical experience and success, anticipated well production, and the amount of investment returns investors can expect to realize through the NDDF program. These misrepresentations and omissions are not the only acts Defendants have taken in furtherance of their scheme.

35.    In addition, Defendants are engaged in a practice and course of business of misusing investor proceeds for their own purposes and benefits including paying commissions, covering non-NDDF expenses, and personally siphoning funds from the NDDF investment.

36.    Moreover, Defendants are failing to act as promised in their NDDF Offering Documents because they did not use 70% of investor funds to acquire 62.5% "net working interest" in wells and drill and operate said wells as they represented they would. Instead, they have diverted investors' funds to other uses and acquired only a tiny fraction of the working interests they promised to obtain, which interests they have sued to undo.

**V.**
**CLAIMS FOR RELIEF**

**FIRST CLAIM**
**Violations of Section 17(a) of the Securities Act**
**(against Sethi Petroleum and Sameer Sethi)**

37.    The Commission repeats and re-alleges Paragraphs 1 through 36 of the Complaint as if fully set forth herein.

38.    By engaging in the conduct described herein, Defendants directly or indirectly, singly or in concert, in the offer or sale of securities, by use of the means and instrumentalities of interstate commerce or of the mails:

(a)      employed devices, schemes or artifices to defraud;

(b)      obtained money or property by means of untrue statements of material fact or omissions to state material facts necessary in order to make the statements made, in light of the circumstances under which they were made, not misleading; and

(c)      engaged in transactions, practices, or courses of business which operated or would operate as a fraud or deceit upon purchasers of securities.

39.      With regard to their violations of Section 17(a)(1) of the Securities Act, Defendants acted intentionally, knowingly or with severe recklessness with respect to the truth. With regard to their violations of Sections 17(a)(2) and 17(a)(3) of the Securities Act, Defendants acted at least negligently.

40.      By engaging in this conduct, Defendants violated, and unless enjoined will continue to violate, Section 17(a) of the Securities Act [15 U.S.C. §§ 77q].

## SECOND CLAIM
### Violations of Section 10(b) of the Exchange Act and Rule 10b-5 thereunder
#### (against Sethi Petroleum and Sameer Sethi)

41.      The Commission repeats and re-alleges Paragraphs 1 through 36 of the Complaint as if fully set forth herein.

42.      By engaging in the conduct described herein, Defendants directly or indirectly, singly or in concert, by the use of the means or instrumentalities of interstate commerce, or of the mails, or of the facilities of a national securities exchange, in connection with the purchase or sale of securities, knowingly or recklessly:

(a)      employed devices, schemes, and artifices to defraud;

(b)      made untrue statements of material fact or omitted to state material facts necessary in order to make the statements made, in the light of the circumstances

under which they were made, not misleading; and

(c)      engaged in acts, practices, or courses of business which operated or would operate as a fraud or deceit upon purchasers of securities and upon other persons.

43.      Defendants engaged in this conduct intentionally, knowingly or with severe recklessness with respect to the truth.

44.      By engaging in this conduct, Defendants violated, and unless enjoined will continue to violate, Section 10(b) of the Exchange Act [15 U.S.C. § 78j(b)] and Exchange Act Rule 10b-5 [17 C.F.R. § 240.10b-5].

### THIRD CLAIM
### Control Person Liability Under Section 20(a) of the Exchange Act
### (against Sameer Sethi)

45.      The Commission repeats and re-alleges Paragraphs 1-36 of the Complaint as if fully set forth herein.

46.      Defendant Sethi Petroleum violated and Section 10(b) of the Exchange Act and Rule 10b-5 thereunder as alleged above.

47.      At all relevant times, Defendant Sameer Sethi directed and controlled Sethi Petroleum's management and policies, including the conduct of its other representatives, and was a controlling person of Sethi Petroleum and its representatives under Section 20(a) of the Exchange Act [15 U.S.C. § 78t(a)]. Defendant Sameer Sethi was a culpable participant in the fraudulent conduct described above and knowingly or recklessly induced many of the material misrepresentations and misstatements alleged herein.

48.      Defendant Sameer Sethi is liable as a controlling person under Section 20(a) of the Exchange Act for Sethi Petroleum's violations of Section 10(b) of the Exchange Act and Rule 10b-5 thereunder, and unless enjoined will again violate this provision and rule.

## FOURTH CLAIM
### Violations of Section 20(b) of the Securities Exchange Act
### (against Sameer Sethi)

49.     The Commission repeats and re-alleges Paragraphs 1-36 of the Complaint as if fully set forth herein.

50.     By his conduct as alleged above, Sameer Sethi, directly and indirectly, acted through and used another person or entity to violate Section 10(b) of the Exchange Act and Rule 10b-5 thereunder.

51.     In acting through and using another person or entity to violate Section 10(b) of the Exchange Act and Rule 10b-5 thereunder, Sameer Sethi acted intentionally, knowingly or with severe recklessness with respect to the truth.

52.     By engaging in this conduct, Sameer Sethi violated, and unless enjoined will continue to violate, Sections 10(b) and 20(b) of the Exchange Act and Rule 10b-5 thereunder.

## VI.
## RELIEF REQUESTED

For these reasons, the Commission respectfully requests that the Court enter a judgment:

(a)     Temporarily and permanently enjoining Defendants and their agents, servants, employees, attorneys and all persons in active concert or participation with them who receive actual notice of the injunction by personal service or otherwise, from violating, directly or indirectly Section 17(a) of the Securities Act [15 U.S.C. §§ 5 U.S.C. § 77q(a)] and Section 10(b) of the Exchange Act [15 U.S.C. §§ 78j(b), 78t(a) and 78t(b)], and Rule 10b-5 thereunder [17 C.F.R. § 240.10b-5] and temporarily and permanently enjoining Defendant Sameer Sethi and his agents, servants, employees, attorneys and all persons in active concert or participation with them who receive actual notice of the injunction by personal service or otherwise, from violating,

directly or indirectly, Sections 20(a) and 20(b) of the Exchange Act [15 U.S.C. §§ 78j(b), 78t(a) and 78t(b)].

(b)     Temporarily and permanently enjoining Defendants from directly or indirectly soliciting investors existing or potential investors to purchase or sell securities, provided however, that such injunction shall not prevent Defendant Sameer Sethi from purchasing or selling securities listed on a national securities exchange for his own personal accounts;

(c)     Ordering Defendants to disgorge, jointly and severally, all ill-gotten gains and/or unjust enrichment realized by each of them, plus prejudgment interest;

(d)     Ordering each Defendant to pay an appropriate civil monetary penalty pursuant to Section 20(d) of the Securities Act [15 U.S.C. § 77t(d)] and Section 21(d)(3) of the Exchange Act [15 U.S.C. § 78u(d)(3)];

(e)     Retaining jurisdiction over this action to implement and carry out the terms of all orders and decrees that may be entered; and

(d)     Granting all other relief to which the Commission may be entitled.

Dated: May 14, 2015                    Respectfully submitted,

                                       MATTHEW J. GULDE
                                       Illinois Bar No. 6272325
                                       TIMOTHY L. EVANS
                                       Texas Bar No. 24065211
                                       United States Securities and Exchange Commission
                                       Fort Worth Regional Office
                                       Burnett Plaza, Suite 1900
                                       801 Cherry Street, Unit #18
                                       Fort Worth, TX 76102-6882
                                       Ph: 817-978-1410 (mjg)
                                       Fax: 917-978-4927
                                       guldem@sec.gov

                                       COUNSEL FOR PLAINTIFF UNITED STATES
                                       SECURITIES AND EXCHANGE COMMISSION

JS 44 (Rev. 12/12)

# CIVIL COVER SHEET

The JS 44 civil cover sheet and the information contained herein neither replace nor supplement the filing and service of pleadings or other papers as required by law, except as provided by local rules of court. This form, approved by the Judicial Conference of the United States in September 1974, is required for the use of the Clerk of Court for the purpose of initiating the civil docket sheet. *(SEE INSTRUCTIONS ON NEXT PAGE OF THIS FORM.)*

| I. (a) PLAINTIFFS | DEFENDANTS |
|---|---|
| SECURITIES AND EXCHANGE COMMISSION | SETHI PETROLEUM, LLC, et al |

**(b)** County of Residence of First Listed Plaintiff _____
*(EXCEPT IN U.S. PLAINTIFF CASES)*

County of Residence of First Listed Defendant _____
*(IN U.S. PLAINTIFF CASES ONLY)*
NOTE: IN LAND CONDEMNATION CASES, USE THE LOCATION OF THE TRACT OF LAND INVOLVED.

**(c)** Attorneys *(Firm Name, Address, and Telephone Number)*

Attorneys *(If Known)*

## II. BASIS OF JURISDICTION *(Place an "X" in One Box Only)*

☒ 1  U.S. Government
  Plaintiff

☐ 3  Federal Question
  *(U.S. Government Not a Party)*

☐ 2  U.S. Government
  Defendant

☐ 4  Diversity
  *(Indicate Citizenship of Parties in Item III)*

## III. CITIZENSHIP OF PRINCIPAL PARTIES *(Place an "X" in One Box for Plaintiff*
*(For Diversity Cases Only)* *and One Box for Defendant)*

| | PTF | DEF | | PTF | DEF |
|---|---|---|---|---|---|
| Citizen of This State | ☐ 1 | ☐ 1 | Incorporated *or* Principal Place of Business In This State | ☐ 4 | ☐ 4 |
| Citizen of Another State | ☐ 2 | ☐ 2 | Incorporated *and* Principal Place of Business In Another State | ☐ 5 | ☐ 5 |
| Citizen or Subject of a Foreign Country | ☐ 3 | ☐ 3 | Foreign Nation | ☐ 6 | ☐ 6 |

## IV. NATURE OF SUIT *(Place an "X" in One Box Only)*

| CONTRACT | TORTS | | FORFEITURE/PENALTY | BANKRUPTCY | OTHER STATUTES |
|---|---|---|---|---|---|
| ☐ 110 Insurance | **PERSONAL INJURY** | **PERSONAL INJURY** | ☐ 625 Drug Related Seizure of Property 21 USC 881 | ☐ 422 Appeal 28 USC 158 | ☐ 375 False Claims Act |
| ☐ 120 Marine | ☐ 310 Airplane | ☐ 365 Personal Injury - Product Liability | ☐ 690 Other | ☐ 423 Withdrawal 28 USC 157 | ☐ 400 State Reapportionment |
| ☐ 130 Miller Act | ☐ 315 Airplane Product Liability | ☐ 367 Health Care/ | | | ☐ 410 Antitrust |
| ☐ 140 Negotiable Instrument | ☐ 320 Assault, Libel & Slander | Pharmaceutical Personal Injury | | **PROPERTY RIGHTS** | ☐ 430 Banks and Banking |
| ☐ 150 Recovery of Overpayment & Enforcement of Judgment | ☐ 330 Federal Employers' | Product Liability | | ☐ 820 Copyrights | ☐ 450 Commerce |
| ☐ 151 Medicare Act | Liability | ☐ 368 Asbestos Personal Injury Product | | ☐ 830 Patent | ☐ 460 Deportation |
| ☐ 152 Recovery of Defaulted Student Loans | ☐ 340 Marine | Liability | | ☐ 840 Trademark | ☐ 470 Racketeer Influenced and Corrupt Organizations |
| (Excludes Veterans) | ☐ 345 Marine Product Liability | **PERSONAL PROPERTY** | **LABOR** | **SOCIAL SECURITY** | ☐ 480 Consumer Credit |
| ☐ 153 Recovery of Overpayment of Veteran's Benefits | ☐ 350 Motor Vehicle | ☐ 370 Other Fraud | ☐ 710 Fair Labor Standards Act | ☐ 861 HIA (1395ff) | ☐ 490 Cable/Sat TV |
| ☐ 160 Stockholders' Suits | ☐ 355 Motor Vehicle Product Liability | ☐ 371 Truth in Lending | ☐ 720 Labor/Management Relations | ☐ 862 Black Lung (923) | ☒ 850 Securities/Commodities/ Exchange |
| ☐ 190 Other Contract | ☐ 360 Other Personal Injury | ☐ 380 Other Personal Property Damage | ☐ 740 Railway Labor Act | ☐ 863 DIWC/DIWW (405(g)) | ☐ 890 Other Statutory Actions |
| ☐ 195 Contract Product Liability | ☐ 362 Personal Injury - Medical Malpractice | ☐ 385 Property Damage Product Liability | ☐ 751 Family and Medical Leave Act | ☐ 864 SSID Title XVI | ☐ 891 Agricultural Acts |
| ☐ 196 Franchise | | | ☐ 790 Other Labor Litigation | ☐ 865 RSI (405(g)) | ☐ 893 Environmental Matters |
| | | | ☐ 791 Employee Retirement Income Security Act | | ☐ 895 Freedom of Information Act |
| **REAL PROPERTY** | **CIVIL RIGHTS** | **PRISONER PETITIONS** | | **FEDERAL TAX SUITS** | ☐ 896 Arbitration |
| ☐ 210 Land Condemnation | ☐ 440 Other Civil Rights | **Habeas Corpus:** | | ☐ 870 Taxes (U.S. Plaintiff or Defendant) | ☐ 899 Administrative Procedure Act/Review or Appeal of Agency Decision |
| ☐ 220 Foreclosure | ☐ 441 Voting | ☐ 463 Alien Detainee | | ☐ 871 IRS—Third Party 26 USC 7609 | ☐ 950 Constitutionality of State Statutes |
| ☐ 230 Rent Lease & Ejectment | ☐ 442 Employment | ☐ 510 Motions to Vacate Sentence | | | |
| ☐ 240 Torts to Land | ☐ 443 Housing/ Accommodations | ☐ 530 General | | | |
| ☐ 245 Tort Product Liability | ☐ 445 Amer. w/Disabilities - Employment | ☐ 535 Death Penalty | **IMMIGRATION** | | |
| ☐ 290 All Other Real Property | ☐ 446 Amer. w/Disabilities - Other | **Other:** | ☐ 462 Naturalization Application | | |
| | ☐ 448 Education | ☐ 540 Mandamus & Other | ☐ 465 Other Immigration Actions | | |
| | | ☐ 550 Civil Rights | | | |
| | | ☐ 555 Prison Condition | | | |
| | | ☐ 560 Civil Detainee - Conditions of Confinement | | | |

## V. ORIGIN *(Place an "X" in One Box Only)*

☒ 1 Original
  Proceeding

☐ 2 Removed from
  State Court

☐ 3 Remanded from
  Appellate Court

☐ 4 Reinstated or
  Reopened

☐ 5 Transferred from
  Another District
  *(specify)*

☐ 6 Multidistrict
  Litigation

## VI. CAUSE OF ACTION

Cite the U.S. Civil Statute under which you are filing *(Do not cite jurisdictional statutes unless diversity)*:
Sec 17(a) Securities Act [15 U.S.C. § 5 U.S.C. § 77q(a)], Sec 10(b) of the Exchange Act [15 U.S.C.§§ 78j(b)

Brief description of cause:
Rule 10b-5 thereunder [17 C.F.R. § 240.10b-5, Secs 20 (a) & (b)Exchange Act[15 U.S.C. §§ 78t(a) & (b)

## VII. REQUESTED IN COMPLAINT:

☐ CHECK IF THIS IS A CLASS ACTION UNDER RULE 23, F.R.Cv.P.

DEMAND $ _____

CHECK YES only if demanded in complaint:
JURY DEMAND: ☐ Yes ☐ No

## VIII. RELATED CASE(S) IF ANY

*(See instructions):*

JUDGE _____ DOCKET NUMBER _____

DATE 5/14/15

SIGNATURE OF ATTORNEY OF RECORD

**FOR OFFICE USE ONLY**

RECEIPT # _____ AMOUNT _____ APPLYING IFP _____ JUDGE _____ MAG. JUDGE _____

# EXHIBIT B

UNITED STATES DISTRICT COURT
FOR THE EASTERN DISTRICT OF TEXAS
SHERMAN DIVISION

**FILED**
U.S. DISTRICT COURT
EASTERN DISTRICT OF TEXAS

MAY 14 2015

DAVID J. MALAND, CLERK

| | | |
|---|---|---|
| SECURITIES AND EXCHANGE COMMISSION, | § | |
| | § | |
| Plaintiff, | § | |
| | § | |
| v. | § | **Case No.:** 4:15-cv-338 |
| | § | Judge Mazzant |
| SETHI PETROLEUM, LLC and | § | |
| SAMEER P. SETHI, | § | |
| | § | |
| Defendants. | § | |

### ORDER APPOINTING RECEIVER

This matter came before me, the undersigned United States District Judge, this 14th day

of May 2015, on the application of Plaintiff Securities and Exchange Commission

("Commission") for the appointment of a Receiver for Defendant Sethi Petroleum, LLC and

Defendant Sameer P. Sethi. In contemplation of the eventual return of assets to investors harmed

by the misconduct alleged in the Complaint, and having subject matter jurisdiction over this

action and personal jurisdiction over the Defendants, it appears that this Order Appointing

Receiver is both necessary and appropriate to marshal, conserve, hold and, where necessary,

operate all of the Defendants' assets pending further order of the Court.

IT IS THEREFORE ORDERED that:

1.      This Court assumes exclusive jurisdiction and takes possession of the assets,

monies, securities, properties, real and personal, tangible and intangible, of whatever kind and

description, wherever located, and the legally recognized privileges (with regard to the Sethi

Petroleum), of Defendants Sethi Petroleum and Sameer P. Sethi. Defendants and all entities and

assets they own or control ("the Defendants subject to this Order will be referred to as

"Receivership Defendants" and the assets referenced above will be referred to as "Receivership



Assets"), and the books and records, client lists, account statements, financial and accounting documents, computers, computer hard drives, computer disks, internet exchange servers telephones, personal digital devices and other informational resources of or in possession of the Defendants, or issued by Defendants and in possession of any agent or employee of the Defendants ("Receivership Records").

2.      Marcus Helt, Gardere Wynn Sewell, LLP, Thanksgiving Tower, Suite 3000, 1601 Elm Street, Dallas, Texas 75201; (214) 999-4526; (214) 999-3526 (facsimile); mhelt@gardere.com, is hereby appointed Receiver for the Receivership Assets and Receivership Records (collectively, "Receivership Estate"), with the full power of an equity receiver under common law as well as such powers as are enumerated herein as of the date of this Order. The Receiver shall not be required to post a bond unless directed by the Court but is hereby ordered to well and faithfully perform the duties of his office, to timely account for all monies, securities, and other properties which may come into his hands, and to abide by and perform all duties set forth in this Order. Except for an act of willful malfeasance or gross negligence, the Receiver shall not be liable for any loss or damage incurred by the Receivership Estate, or of any Defendant and its clients, associates, subsidiaries, affiliates, officers, directors, agents, or employees, or by any of their creditors or equity holders because of any act performed or not performed by him or his agents or assigns in connection with the discharge of his duties and responsibilities hereunder. The Receiver hereby holds, and is therefore empowered to waive, all privileges, including the attorney-client privilege, held by all entity defendants covered by this Receivership Order.   The Receiver has a continuing duty to ensure that there are no conflicts of interest between the Receiver, professionals the Receiver engages to work on the Receiver's behalf, and the receivership estate.

3.      The Receiver shall have all powers, authorities, rights and privileges heretofore possessed by the officers, directors, managers and general and limited partners of the entity Receivership Defendants under applicable state and federal law, by the governing charters, by-laws, articles and/or agreements in addition to all powers and authority of a receiver at equity, and all powers conferred upon a receiver by the provisions of 28 U.S.C. §§ 754, 959 and 1692, and Fed.R.Civ.P. 66.

4.      The trustees, directors, officers, managers, employees, investment advisors, accountants, attorneys and other agents of the Receivership Defendants are hereby dismissed and the powers of any general partners, directors and/or managers are hereby suspended.  Such persons and entities shall have no authority with respect to the Receivership Defendants' operations or assets, except to the extent as may hereafter be expressly granted by the Receiver. The Receiver shall assume and control the operation of the Receivership Defendants and shall pursue and preserve all of their claims.

5.      No person holding or claiming any position of any sort with any of the Receivership Defendants shall possess any authority to act by or on behalf of any of the Receivership Defendants.

6.      The duties of the Receiver shall be specifically limited to matters relating to the Receivership Estate and unsettled claims thereof remaining in the possession of the Receiver as of the date of this Order.  Nothing in this Order shall be construed to require further investigation of Receivership Estate assets heretofore liquidated and/or distributed or claims of the Receivership Estate settled prior to issuance of this Order.  However, this paragraph shall not be construed to limit the powers of the Receiver in any regard with respect to transactions that may have occurred prior to the date of this Order.

7.     Until the expiration date of this Order or further Order of this Court, Receiver is authorized to immediately take and have complete and exclusive control, possession, and custody of the Receivership Estate and to any assets traceable to assets owned by the Receivership Estate.

8.     As of the entry of this Order, the Receiver is specifically directed and authorized to perform the following duties:

    (a)     Maintain full control of the Receivership Estate with the power to retain or remove, as the Receiver deems necessary or advisable, any officer, director, independent contractor, employee, or agent of the Receivership Estate;

    (b)     Collect, marshal, and take custody, control, and possession of all the funds, accounts, mail, and other assets of, or in the possession or under the control of, the Receivership Estate, or assets traceable to assets owned or controlled by the Receivership Estate, wherever situated, the income and profit therefrom and all sums of money now or hereafter due or owing to the Receivership Estate with full power to collect, receive, and take possession of, without limitation, all goods, chattel, rights, credits, monies, effects, lands, leases, books and records, work papers, records of account, including computer maintained information, contracts, financial records, monies on hand in banks and other financial initiations, and other papers and documents of other individuals, partnerships, or corporations whose interests are now held by or under the direction, possession, custody, or control of the Receivership Estate;

    (c)     Institute such actions or proceedings to impose a constructive trust, obtain possession, and/or recover judgment with respect to persons or entities who received

assets or records traceable to the Receivership Estate. All such actions shall be filed in this Court;

(d)     Obtain, by presentation of this Order, documents, books, records, accounts, deposits, testimony, or other information within the custody or control of any person or entity sufficient to identify accounts, properties, liabilities, causes of action, or employees of the Receivership Estate. The attendance of a person or entity for examination and/or production of documents may be compelled in a manner provided in Rule 45, Fed. R. Civ. P., or as provided under the laws of any foreign country where such documents, books, records, accounts, deposits, or testimony may be located;

(e)     Without breaching the peace and, if necessary, with the assistance of local peace officers or United States marshals to enter and secure any premises, wherever located or situated, in order to take possession, custody, or control of, or to identify the location or existence of, Receivership Estate assets or records;

(f)     Make such ordinary and necessary payments, distributions, and disbursements from the Receivership Estate as the Receiver deems advisable or proper for the marshaling, maintenance, or preservation of the Receivership Estate. Receiver is further authorized to contract and negotiate with any claimants against the Receivership Estate (including, without limitation, creditors) for the purpose of compromising or settling any claim. To this purpose, in those instances in which Receivership Estate assets serve as collateral to secured creditors, the Receiver has the authority to surrender such assets to secured creditors, conditional upon the waiver of any deficiency of collateral;

(g)     Perform all acts necessary to conserve, hold, manage, and preserve the value of the Receivership Estate, in order to prevent any irreparable loss, damage, and injury to the Estate;

(h)     Enter into such agreements in connection with the administration of the Receivership Estate, including, but not limited to, the employment of such managers, agents, custodians, consultants, investigators, attorneys, and accountants as Receiver judges necessary to perform the duties set forth in this Order and to compensate them from the Receivership Assets;

(i)     Subject to his obligation to expend receivership funds in a reasonable and cost-effective manner, the Receiver is authorized to investigate, institute, prosecute, compromise, adjust, intervene in, or become party to such actions or proceedings in state, federal, or foreign courts that the Receiver deems necessary and advisable to preserve the value of the Receivership Estate, or that the Receiver deems necessary and advisable to carry out the Receiver's mandate under this Order and likewise to defend, compromise, or adjust or otherwise dispose of any or all actions or proceedings instituted against the Receivership Estate that the Receiver deems necessary and advisable to carry out the Receiver's mandate under this Order;

(j)     Preserve the Receivership Estate and minimize expenses in furtherance of maximum and timely disbursement thereof to claimants;

(k)     To take all actions to manage, maintain, and/or wind-down business operations of the Receivership Estates, including making any legally required payments to creditors, employees and agents of the Receivership Estates and communicating with vendors, investors, governmental and regulatory authorities, and others as appropriate.

(l)     Prepare and submit periodic reports to this Court and to the parties as directed by this Court, including as specified below; and

(m)     Subject to and in accordance with the provisions noted below, file with this Court requests for approval of reasonable fees to be paid to the Receiver and any person or entity retained by him and interim and final accountings for any reasonable expenses incurred and paid pursuant to order of this Court. Such fees and expenses shall be paid from the Receivership Estate.

9.     Upon the request of the Receiver, the United States Marshal's Office is hereby ordered to assist the Receiver in carrying out his duties to take possession, custody, or control of, or identify the location of, any Receivership Estate assets or records.

10.     Creditors and all other persons are hereby restrained and enjoined from the following actions, except in this Court, unless this Court, consistent with general equitable principals and in accordance with its ancillary equitable jurisdiction in this matter, orders that such actions may be conducted in another forum or jurisdiction:

(a)     The commencement or continuation, including the issuance or employment of process, of any judicial, administrative, or other proceeding against the Receiver, any of the defendants, the Receivership Estate, or any agent, officer, or employee related to the Receivership Estate, arising from the subject matter of this civil action; or

(b)     The enforcement, against the Receiver, or any of the defendants, of any judgment that would attach to or encumber the Receivership Estate that was obtained before the commencement of this proceeding.

11.     Creditors and all other persons are hereby restrained and enjoined, without prior approval of the Court, from:

      (a)     Any act to obtain possession of the Receivership Estate assets;

      (b)     Any act to create, perfect, or enforce any lien against the property of the Receiver, or the Receivership Estate;

      (c)     Any act to collect, assess, or recover a claim against the Receiver or that would attach to or encumber the Receivership Estate; or

      (d)     The set off of any debt owed by the Receivership Estate or secured by the Receivership Estate assets based on any claim against the Receiver or the Receivership Estate.

12.     As set forth in detail below, the following proceedings, excluding the instant proceeding and all police or regulatory actions and actions of the Commission related to the above-captioned enforcement action, are stayed until further Order of this Court:

> All civil legal proceedings of any nature, including, but not limited to, bankruptcy proceedings, arbitration proceedings, foreclosure actions, default proceedings, or other actions of any nature involving: (a) the Receiver, in his capacity as Receiver; (b) any Receivership Property, wherever located; (c) any of the Receivership Defendants, including subsidiaries and partnerships; or, (d) any of the Receivership Defendants' past or present officers, directors, managers, agents, or general or limited partners sued for, or in connection with, any action taken by them while acting in such capacity of any nature, whether as plaintiff, defendant, third-party plaintiff, third-party defendant, or otherwise (such proceedings are hereinafter referred to as "Ancillary Proceedings").

13.     The parties to any and all Ancillary Proceedings are enjoined from commencing or continuing any such legal proceeding, or from taking any action, in connection with any such proceeding, including, but not limited to, the issuance or employment of process.

14.     All Ancillary Proceedings are stayed in their entirety, and all Courts having any jurisdiction thereof are enjoined from taking or permitting any action until further Order of this

Court.   Further, as to a cause of action accrued or accruing in favor of one or more of the Receivership Defendants against a third person or party, any applicable statute of limitation is tolled during the period in which this injunction against commencement of legal proceedings is in effect as to that cause of action.

15.     Defendants, their respective officers, agents, and employees and all persons in active concert or participation with them who receive notice of this Order by personal service or otherwise, including, but not limited to, any financial institution, broker-dealer, investment adviser, private equity fund or investment banking firm, and each of them, are hereby ordered, restrained, and enjoined from, directly or indirectly, making any payment or expenditure of any Receivership Estate assets that are owned by Defendants or in the actual or constructive possession of any entity directly or indirectly owned or controlled or under common control with the Receivership Estate, or effecting any sale, gift, hypothecation, assignment, transfer, conveyance, encumbrance, disbursement, dissipation, or concealment of such assets.  A copy of this Order may be served on any bank, savings and loan, broker-dealer, or any other financial or depository institution to restrain and enjoin any such institution from disbursing any of the Receivership Estate assets.  Upon presentment of this Order, all persons, including financial institutions, shall provide account-balance information, transaction histories, all account records and any other Receivership Records to the Receiver or his agents and to Commission counsel, in the same manner as they would be provided were the Receiver the signatory on the account.

16.     Defendants, and their respective agents, officers, and employees and all persons in active concert or participation with them are hereby enjoined from doing any act or thing whatsoever to interfere with the Receiver's taking control, possession, or management of the Receivership Estate or to in any way interfere with the Receiver or to harass or interfere with the

duties of the Receiver or to interfere in any manner with the exclusive jurisdiction of this Court over the Receivership Estate, including the filing or prosecuting any actions or proceedings which involve the Receiver or which affect the Receivership Assets or Receivership Records, specifically including any proceeding initiated pursuant to the United States Bankruptcy Code, except with the permission of this Court. Any actions so authorized to determine disputes relating to Receivership Assets and Receivership Records shall be filed in this Court.

17.     The individual Receivership Defendants and the past and/or present officers, directors, agents, managers, general and limited partners, trustees, attorneys, accountants and employees of the entity Receivership Defendants, as well as those acting in their place, are hereby ordered and directed to preserve and turn over to the Receiver forthwith all paper and electronic information of, and/or relating to, the Receivership Defendants and/or all Receivership Property; such information shall include but not be limited to books, records, documents, accounts and all other instruments and papers.

18.     Within ten (10) days of the entry of this Order, the Receivership Defendants shall file with the Court and serve upon the Receiver and the Commission a sworn statement, listing: (a) the identity, location and estimated value of all Receivership Property; (b) all employees (and job titles thereof), other personnel, attorneys, accountants and any other agents or contractors of the Receivership Defendants; and, (c) the names, addresses and amounts of claims of all known creditors of the Receivership Defendants.

19.     Within thirty (30) days of the entry of this Order, the Receivership Defendants shall file with the Court and serve upon the Receiver and the Commission a sworn statement and accounting, with complete documentation, covering the period from January 1, 2013, to the present:

(a)      Of all Receivership Assets, wherever located, held by or in the name of the Receivership Defendants, or in which any of them, directly or indirectly, has or had any beneficial interest, or over which any of them maintained or maintains and/or exercised or exercises control, including, but not limited to: (i) all securities, investments, funds, real estate, automobiles, jewelry and other assets, stating the location of each; and (ii) any and all accounts, including all funds held in such accounts, with any bank, brokerage or other financial institution held by, in the name of, or for the benefit of any of them, directly or indirectly, or over which any of them maintained or maintains and/or exercised or exercises any direct or indirect control, or in which any of them had or has a direct or indirect beneficial interest, including the account statements from each bank, brokerage or other financial institution;

(b)      Identifying every account at every bank, brokerage or other financial institution: (i) over which Receivership Defendants have signatory authority; and (ii) opened by, in the name of, or for the benefit of, or used by, the Receivership Defendants;

(c)      Identifying all credit, bank, charge, debit or other deferred payment card issued to or used by each Receivership Defendant, including but not limited to the issuing institution, the card or account number(s), all persons or entities to which a card was issued and/or with authority to use a card, the balance of each account and/or card as of the most recent billing statement, and all statements for the last twelve months;

(d)      Of all assets received by any of them from any person or entity, including the value, location, and disposition of any assets so received;

(e)      Of all funds received by the Receivership Defendants, and each of them, in any way related, directly or indirectly, to the conduct alleged in the Commission's

Complaint.  The submission must clearly identify, among other things, all investors, the securities they purchased, the date and amount of their investments, and the current location of such funds;

      (f)    Of all expenditures exceeding $1,000 made by any of them, including those made on their behalf by any person or entity; and

      (g)    Of all transfers of assets made by any of them.

20.    Within thirty (30) days of the entry of this Order, the Receivership Defendants shall provide to the Receiver and the Commission copies of the Receivership Defendants' federal income tax returns for 2013-2014 with all relevant and necessary underlying documentation.

21.    The individual Receivership Defendants and the entity Receivership Defendants' past and/or present officers, directors, agents, attorneys, managers, shareholders, employees, accountants, debtors, creditors, managers and general and limited partners, and other appropriate persons or entities shall answer under oath to the Receiver all questions which the Receiver may put to them and produce all documents as required by the Receiver regarding the business of the Receivership Defendants, or any other matter relevant to the operation or administration of the receivership or the collection of funds due to the Receivership Defendants.  In the event that the Receiver deems it necessary to require the appearance of the aforementioned persons or entities, the Receiver shall make its discovery requests in accordance with the Federal Rules of Civil Procedure.

22.    The Receiver may issue subpoenas to compel testimony of persons or production of records, consistent with the Federal Rules of Civil Procedure and applicable Local Rules, except for the provisions of Fed.R.Civ.P. 26(d)(1), concerning any subject matter within the powers and duties granted by this Order.

23.     The Receivership Defendants are required to assist the Receiver in fulfilling his duties and obligations.  As such, they must respond promptly and truthfully to all requests for information and documents from the Receiver.

24.     The Receiver may seek authorization of this Court to file voluntary petitions for relief under Title 11 of the United States Code (the "Bankruptcy Code") for the Receivership Defendants.  If a Receivership Defendant is placed in bankruptcy proceedings, the Receiver may become, and may be empowered to operate each of the Receivership Estates as, a debtor in possession.  In such a situation, the Receiver shall have all of the powers and duties as provided a debtor in possession under the Bankruptcy Code to the exclusion of any other person or entity.  Pursuant to the provisions of this Receivership Order, the Receiver is vested with the management authority for all entity Receivership Defendants and may therefore file and manage a Chapter 11 petition.  This and other provisions of this Receivership Order bar any person or entity, other than the Receiver, from placing any of the Receivership Defendants in bankruptcy proceedings.

25.     Defendants, their respective officers, agents, and employees and all persons in active concert or participation with them who receive actual notice of this Order by personal service or otherwise, including any financial institution, broker-dealer, investment adviser, private equity fund or investment banking firm, and each of them shall:

(a)      To the extent they have possession, custody, or control of same, provide immediate access to and control and possession of the Receivership Estate assets and records, including securities, monies, and property of any kind, real and personal, including all keys, passwords, entry codes, and all monies deposited in any bank deposited to the credit of the Defendants, wherever situated, and the original of all books, records, documents, accounts, computer printouts, disks, and the like of Defendants to Receiver or his duly authorized agents;

(b)      Cooperate with the Receiver and his duly authorized agents by promptly and honestly responding to all requests for information regarding Receivership Assets and Records and by promptly acknowledging to third parties the Receiver's authority to act on  behalf of the Receivership Estate and by providing such authorizations, signatures, releases, attestations, and access as the Receiver or his duly authorized agents may reasonably request;

(c)      Provide the Receiver and the Commission with a prompt, full accounting of all Receivership Estate assets and documents outside the territory of the United States which are held either:  (1) by them, (2) for their benefit, or (3) under their control;

(d)      Transfer to the territory of the United States all Receivership Estate assets and records in foreign countries held either:  (1) by them, (2) for their benefit, or (3) under their control; and

(e)      Hold and retain all such repatriated Receivership Estate assets and documents and prevent any transfer, disposition, or dissipation whatsoever of any such assets or documents, until such time as they may be transferred into the possession of the Receiver.

26.     Any financial institution, broker-dealer, investment adviser, private equity fund or investment banking firm or person that holds, controls, or maintains accounts or assets of or on behalf of any Defendant, or has held, controlled, or maintained any account or asset of or on behalf of any Defendant since January 1, 2013, shall:

(a)     Hold and retain within its control and prohibit the withdrawal, removal, assignment, transfer, pledge, hypothecation, encumbrance, disbursement, dissipation, conversion, sale, gift, or other disposal of any of the assets, funds, or other property held by or on behalf of any Defendant in any account maintained in the name of or for the benefit of any Defendant in whole or in part except:

(i)     as directed by further order of this Court, or

(ii)     as directed in writing by the Receiver or his agents;

(b)     Deny access by any Defendant or others persons not authorized by the Receiver to any safe deposit boxes that are subject to access by Defendants; and

(c)     The Receiver may obtain, by presentation of this Order, documents, books, records, accounts, deposits, or other information within the custody or control of any person or entity sufficient to identify accounts, properties, liabilities, causes of action, or employees of the Receivership Estate.  The attendance of a person or entity for examination and/or production of documents may be compelled by the Receiver in a manner provided in Rule 45, Fed. R. Civ. P., or as provided under the laws of any foreign country where such documents, books, records, accounts, deposits, or testimony may be located;

27.     The Defendants, their officers, agents, and employees and all persons in active concert or participation with them and other persons who have notice of this Order by personal

service or otherwise, are hereby restrained and enjoined from destroying, mutilating, concealing, altering, transferring, or otherwise disposing of, in any manner, directly or indirectly, any contracts, accounting data, correspondence, advertisements, computer tapes, disks or other computerized records, books, written or printed records, handwritten notes, telephone logs, telephone scripts, receipt books, ledgers, personal and business canceled checks and check registers, bank statements, appointment books, copies of federal, state, or local business or personal income or property tax returns, and other documents or records of any kind that relate in any way to the Receivership Estate or are relevant to this action.

28.     The Receiver is authorized to take immediate possession of all personal property of the Receivership Defendants, wherever located, including but not limited to electronically stored information, computers, laptops, hard drives, external storage drives, and any other such memory, media or electronic storage devices, books, papers, data processing records, evidence of indebtedness, bank records and accounts, savings records and accounts, brokerage records and accounts, certificates of deposit, stocks, bonds, debentures, and other securities and investments, contracts, mortgages, furniture, office supplies and equipment.

29.     The Receiver is authorized to take immediate possession of all real property of the Receivership Defendants, wherever located, including but not limited to all ownership and leasehold interests and fixtures.  Upon receiving actual notice of this Order by personal service, facsimile transmission or otherwise, all persons other than law enforcement officials acting within the course and scope of their official duties, are (without the express written permission of the Receiver) prohibited from: (a) entering such premises; (b) removing anything from such premises; or, (c) destroying, concealing or erasing anything on such premises.

30.     In order to execute the express and implied terms of this Order, the Receiver is

authorized to change door locks to the premises described above.  The Receiver shall have exclusive control of the keys.  The Receivership Defendants, or any other person acting or purporting to act on their behalf, are ordered not to change the locks in any manner, nor to have duplicate keys made, nor shall they have keys in their possession during the term of the receivership.

31.     The Receiver is authorized to open all mail directed to or received by or at the offices or post office boxes of the Receivership Defendants, and to inspect all mail opened prior to the entry of this Order, to determine whether items or information therein fall within the mandates of this Order.

32.     The Receiver is hereby authorized to make appropriate notification to the United States Postal Service to forward delivery of any mail addressed to the Defendants, or any company or entity under the direction and control of the Defendants, to himself.  Further, the Receiver is hereby authorized to open and inspect all such mail to determine the location or identity of assets or the existence and amount of claims.

33.     The Receiver is authorized to asset, prosecute and/or negotiate any claim any under insurance policy held by or issued on behalf of the any of the Receivership Defendants, or their officers, directors, agents, employees, or trustees, and to take any all appropriate steps in connection with such policies.

34.     Nothing in this Order shall prohibit any federal or state law enforcement or regulatory authority from commencing or prosecuting an action against the Defendants their agents, officers, or employees.

35.     Within thirty (30) days after the end of each calendar quarter, the Receiver shall file and serve a full report and accounting of each Receivership Estate (the "Quarterly Status

Report"), reflecting (to the best of the Receiver's knowledge as of the period covered by the report) the existence, value, and location of all Receivership Property, and of the extent of liabilities, both those claimed to exist by others and those the Receiver believes to be legal obligations of the Receivership Estates.

36.     The Quarterly Status Report shall contain the following:

    A.     A summary of the operations of the Receiver;

    B.     The amount of cash on hand, the amount and nature of accrued administrative expenses, and the amount of unencumbered funds in the estate;

    C.     A schedule of all the Receiver's receipts and disbursements (attached as Exhibit A to the Quarterly Status Report), with one column for the quarterly period covered and a second column for the entire duration of the receivership;

    D.     A description of all known Receivership Property, including approximate or actual valuations, anticipated or proposed dispositions, and reasons for retaining assets where no disposition is intended;

    E.     A description of liquidated and unliquidated claims held by the Receivership Estate, including the need for forensic and/or investigatory resources; approximate valuations of claims; and anticipated or proposed methods of enforcing such claims (including likelihood of success in: (i) reducing the claims to judgment; and, (ii) collecting such judgments);

    F.     A list of all known creditors with their addresses and the amounts of their claims;

    G.     The status of Creditor Claims Proceedings, after such proceedings have been commenced; and,

    H.     The Receiver's recommendations for a continuation or discontinuation of the receivership and the reasons for the recommendations.

37.     On the request of the Commission, the Receiver shall provide the Commission with any documentation that the Commission deems necessary to meet its reporting requirements, that is mandated by statute or Congress, or that is otherwise necessary to further

the Commission's mission.

38.     Subject to Paragraphs 39 – 45 immediately below, the Receiver need not obtain Court approval prior to the disbursement of receivership funds for expenses in the ordinary course of the administration and operation of the receivership.

39.     Subject to Paragraph 40 immediately below, the Receiver is authorized to solicit persons and entities ("Retained Personnel") to assist him in carrying out the duties and responsibilities described in this Order.  The Receiver shall not engage any Retained Personnel without first obtaining an Order of the Court authorizing such engagement.

40.     The Receiver and Retained Personnel are entitled to reasonable compensation and expense reimbursement from the Receivership Estates as described in the "Billing Instructions for Receivers in Civil Actions Commenced by the U.S. Securities and Exchange Commission" (the "Billing Instructions") agreed to by the Receiver.  Such compensation shall require the prior approval of the Court.

41.     Within forty-five (45) days after the end of each calendar quarter, the Receiver and Retained Personnel shall apply to the Court for compensation and expense reimbursement from the Receivership Estates (the "Quarterly Fee Applications").  At least thirty (30) days prior to filing each Quarterly Fee Application with the Court, the Receiver will serve upon counsel for the SEC a complete copy of the proposed Application, together with all exhibits and relevant billing information in a format to be provided by SEC staff.

42.     All Quarterly Fee Applications will be interim and will be subject to cost benefit and final reviews at the close of the receivership.  At the close of the receivership, the Receiver will file a final fee application, describing in detail the costs and benefits associated with all litigation and other actions pursued by the Receiver during the course of the receivership.

43.     Quarterly Fee Applications may be subject to a holdback in the amount of 20% of the amount of fees and expenses for each application filed with the Court.  The total amounts held back during the course of the receivership will be paid out at the discretion of the Court as part of the final fee application submitted at the close of the receivership.

44.     Each Quarterly Fee Application shall:

A.     Comply with the terms of the Billing Instructions agreed to by the Receiver; and,

B.     Contain representations (in addition to the Certification required by the Billing Instructions) that: (i) the fees and expenses included therein were incurred in the best interests of the Receivership Estate; and, (ii) with the exception of the Billing Instructions, the Receiver has not entered into any agreement, written or oral, express or implied, with any person or entity concerning the amount of compensation paid or to be paid from the Receivership Estate, or any sharing thereof.

45.     At the close of the Receivership, the Receiver shall submit a Final Accounting, in a format to be provided by SEC staff, as well as the Receiver's final application for compensation and expense reimbursement.

IT IS SO ORDERED.

Signed this 14th day of May, 2015.

_____
AMOS L. MAZZANT, III
UNITED STATES DISTRICT JUDGE